2003 OK 79

**STATE of Oklahoma, ex rel. STATE INSURANCE FUND, Plaintiff/Appellant/Counter–Appellee,**

v.

**GREAT PLAINS CARE CENTER, INC., Defendant/Appellee/Counter–Appellant.**

No. 96,024.

Supreme Court of Oklahoma.

Sept. 30, 2003.

W. Rogers Abbott, II, Oklahoma City, OK, for Plaintiff/Appellant.

Clifford A. Wright, T. Carter Steph, Oklahoma City, OK, for Defendant/Appellee.

SUMMERS, J.

¶ 1 The controversy involves an action

brought by the State Insurance Fund[1] against Great Plains Care Center, a nursing home, to recover workers' compensation premiums of approximately $52,000, allegedly owed on behalf of various contractors who performed services for the nursing home between 1994 and 1996. The matter went to bench trial in the District Court of Oklahoma County, and the court sustained the nursing home's demurrer to the evidence. The nursing home then made a post-judgment motion for attorney's fees and costs, which motion was denied.

¶ 2 The State Insurance Fund appealed the trial court's order sustaining the demurrer. The nursing home (Great Plains) counter-appealed the denial of attorney's fees and costs. The Court of Civil Appeals, Division II, affirmed the judgment of the District Court, and affirmed the post-judgment order denying attorney's fees and costs. Great Plains then sought certiorari in this Court on whether the trial court erroneously denied the post-judgment motion for attorney's fees.[2]

¶ 3 The appellate adjudication by the Court of Civil Appeals affirming the trial court's judgment on the demurrer to the evidence is left undisturbed by our opinion today. We thus vacate only that part of the opinion by the Court of Civil Appeals addressing the trial court's order on attorney's fees and costs. The sole questions before us on certiorari are whether Great Plains was entitled to an award of attorney's fees and/or costs against the State Insurance Fund.

¶ 4 Great Plains argues that inasmuch as it was prevailing party in a contract action for open account or statement of account, it is entitled to attorney's fees under 12 O.S.2001 § 936, and further that if § 936 be held not applicable, it would be entitled to fees under § 941 for successfully defending a frivolous suit brought by a state agency.

## I. Section 936 and Insurance Contracts

¶ 5 The underlying nature of the cause of action determines the applicability of § 936. *Natkin & Co. v. Midwesco, Inc.*, 1993 OK 143, 863 P.2d 1222, 1225. The State Insurance Fund alleged the existence of a contract for insurance and an unpaid premium. May § 936 fees be awarded on an action to recover an insurance premium as asserted by Great Plains?[3] Remarkably, this issue has never been squarely addressed by this Court. We answer in the negative, as we now explain.

Section § 936 states as follows:[4]

---

1. The State Insurance Fund is now known as CompSource Oklahoma. *Nicholas v. Morgan*, 2002 OK 88, n. 1, 58 P.3d 775, 777. See 85 O.S.2001 § 131(e): "(e) The official name of the fund which is known as "The State Insurance Fund" shall be designated in all future references as 'CompSource Oklahoma'. Any references in the Oklahoma Statutes to The State Insurance Fund shall be deemed references to CompSource Oklahoma." The action was commenced in the District Court prior to the change in the name, and we refer to the Fund based upon the name used in this litigation.

2. Although the petition for certiorari raises the attorney's fee issue in the context of 12 O.S.2001 §§ 936, 941, it does not cite to specific statutes on costs, e.g., 12 O.S.2001 §§ 66, 929. In *Fehring v. State Ins. Fund*, 2001 OK 11, n. 12, 19 P.3d 276, 281, we noted the application of § 66 to the State Insurance Fund. In *State ex rel. Dept. of Highways v. Marshall*, 1974 OK 150, 530 P.2d 1023, 1024, this Court cited authority for the proposition that statutory authorization for imposition of costs against the State, or one of its agencies, must be express, and it cannot be implied from a general statute relating to costs. *But see, Chase v. State ex rel. Dept. of Public*

*Safety,* 1990 OK 78, n. 10, 795 P.2d 1048, 1050, (approval of post-decisional order by Court of Civil Appeals imposing appeal related costs upon Department of Public Safety pursuant to 12 O.S. 1981 §§ 66, 978). We decline to address the application of general statutes on costs in the absence of a party raising the issue on certiorari.

3. We assume for the purpose of our analysis, but do not decide, that 12 O.S.2001 § 936 is applicable to an action brought by the State or one of its agencies.

4. The judgment in this matter was dated, signed, and filed on February 22, 2001. We apply the version of § 936 in effect at the time of the judgment. *Ashby v. Harris*, 1996 OK 70, n. 2, 918 P.2d 744, 748, (law in effect at the time of the judgment controls applicable costs statute). References to § 936 are to 12 O.S.2001 § 936. Section § 936 was amended by Okla.Sess.Laws 2002, Ch. 468, § 5, eff. Nov. 1, 2002. The parties used the version of § 936 codified at 12 O.S.2001 § 936, and they do not discuss the effect, if any, of the amendment on this controversy. The Court declines to *sua sponte* address the issue.

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

12 O.S.2001 § 936.

In *Kay v. Venezuelan Sun Oil Co.*, 1991 OK 16, 806 P.2d 648, we said the following:

As originally enacted, § 936 authorized the award of attorney fees for collection on an open account, and was subsequently amended to include seven additional specific categories evidencing contractual indebtedness sought to be recovered. Our strict application rule preserves the obvious legislative intent to authorize awards of attorney fees to the prevailing parties in actions for money judgments for debts created by the contracts enumerated in the statute.

*Id.* 806 P.2d at 651–652, note omitted.

We explained that the history of amendments to § 936 resulted in authorizing attorney's fees for different types of actions: (1) open accounts, (2) statements of account, (3) accounts stated, (4) bills, (5) contracts relating to the purchase or sale of goods, wares, or merchandise, (6) notes, (7) negotiable instruments, and (8) labor and services. *Id.* 806 P.2d at 651, n. 11.

¶ 6 We defined an open account in *Office of Governor Dept. of Indus. Development v. Dalton*, 1977 OK 34, 560 P.2d 971.

[E]xistence of at least three factors are required to establish an open account: (1) An Account based upon running or concurrent dealings; (2) these dealings have not been closed, settled or stated; (3) some term of the contract remains to be settled between parties, or the agreement contemplates further transactions between the parties. Here, we find no account to exist. Although the term 'account' may be difficult to define and somewhat flexible in meaning, Black's Law Dictionary, Revised Fourth Edition, p. 34 indicates it involves debts and credits and might include payments, losses, sales, debits, credits, etc. in most cases showing a balance.

*Id.* 560 P.2d at 972.

Great Plains argued in the trial court that the dealings between the parties were not closed because the premium amounts due were not finalized until the end of the policy period. Premiums paid to the State are calculated at the beginning of the policy period and based upon the employer's estimated expenditure of wages during the policy period.[5]

¶ 7 Historically, both an open account and an account stated were obligations that were enforceable *ex contractu* although both lacked an express agreement on a particular term required for the existence of a contractual obligation.[6] Courts came to refer to missing terms of a contract, as well as the contract itself, as being implied.[7] Thus, one

5. 85 O.S.2001 § 142:
Premiums for any policy period shall be paid into the State Insurance Fund at the beginning of the period according to the estimated expenditure of wages for the period. At the end of the period an adjustment of the premium shall be made according to the actual expenditure of wages. If such adjusted premium is more than the premium paid at the beginning of the period, the employer shall pay the difference immediately upon notification of the amount of the true premium paid in advance, the employer shall at his option receive either refund of the difference or a credit of the amount thereof on his account with "The State Insurance Fund."

6. In the well-known *Slade's Case*, [1602] 4 Rep. 92 b, 76 Eng.Rep. 1072, an *assumpsit* was implied with an existing contract, and then in cer-

tain subsequent cases the contract itself was said to be implied and enforceable although no express agreement existed as to a particular term necessary to the contract. T. Plucknett, *A Concise History of the Common Law*, 645–648, (5th ed.1956).

7. 3 W. Blackstone, *Commentaries on the Law of England*, 161–162 (1768), (discussion of the category of implied contracts arising from presumptive undertakings or *assumpsits;* for example, when goods were sold without an express agreement on the price, and on an account stated between merchants and other persons because of implied promise to pay the balance on an account in the absence of an express promise to pay the balance). *Cf. Shebester v. Triple Crown Insurers*, 1992 OK 20, 826 P.2d 603, 610, (an action is one *ex contractu* when recovery is

difference between the historical ancestors of the modern open account and account stated on one hand, and the express contract on the other, was the source of the obligation being enforced, i.e., implied versus express promises.

¶ 8 This difference in the source or nature of the obligation enforced is found in our cases. For example, in *Globe & Republic Ins. Co. of America v. Independent Trucking Co.*, 1963 OK 274, 387 P.2d 644, an insured brought an action against the insurer to enforce an insurance policy. We said that "An express contract, which defines the duties and liabilities of the parties, whether it be oral or written, is not, as a rule, an open account." *Id.* 387 P.2d at 647, *quoting, Connor Live Stock Co. v. Fisher*, 32 Ariz. 80, 255 P. 996, 57 A.L.R. 196, (1927). *See also Epperson v. Halliburton Co.*, 1967 OK 212, 434 P.2d 877, 880, (stating rule that express contract defining duties and liabilities is not an open account). In sum, because the obligation enforced arose from an "express contract" we said that it was not an open account.

¶ 9 Three courts have used language similar to that in *Globe*, and concluded that a suit to recover unpaid insurance premiums is not based upon an open account.[8] However, one court has concluded that an open account exists when the record shows a pattern of premium billings and payments. *Shea v. State Farm Fire & Cas. Co.*, 198 Ga.App. 790, 403 S.E.2d 81, 82 (1991). In one state an action to recover insurance premiums has been by a suit on a sworn account. *Rudi's Automotive Corp. v. Heeth*, 509 S.W.2d 428, 429, (Tex.Civ.App.-Houston, 1 Dist., 1974, no writ).

¶ 10 The position advanced by Great Plains would make every contract an open account when the parties have agreed to multiple payments to satisfy a contractually agreed indebtedness. It is true in this case that the exact amount of the premiums *may* be altered after estimated premiums have been paid. But the formula for the amount that is due does not change for a definite policy period, and that formula is part of the contract. The insurance policy was for a definite period of time and the premium was for a definite amount. We do not have before us the circumstance of a contractually unspecified policy period, a contractually unspecified premium, or a contractually unspecified date that the full amount of the premium is due. We conclude that the action brought was on an express contract of insurance, and not on an open account. *Office of Governor Dept. of Indus. Development v. Dalton, supra; Globe & Republic Ins. Co. of America v. Independent Trucking Co., supra.*

¶ 11 Great Plains also argued in the alternative that the action was on an account stated. In *Webster Drilling Co. v. Sterling Oil of Oklahoma, Inc.*, 1962 OK 242, 376 P.2d 236, we said that:

> An account stated is an agreement, express or implied. The amount or balance so agreed upon constitutes a new and independent cause of action, superseding and merging the antecedent causes of action represented by the particular constituent items.

*Webster*, 376 P.2d 236, 238.

Thus, Great Plains is, in essence, arguing that a contractual obligation to pay an insurance premium is superceded and merged into a different and subsequent cause of action on an account stated.[9]

---

sought for breach of express or implied promises).

8. *H & H Design Builders, Inc. v. Travelers' Indem. Co.*, 639 So.2d 697, 700 (Fla.App.5th Dist.1994), (suit to recover past-due workers' compensation insurance premiums was not a suit on an open account, but an action based on a written contract); *Fidelity and Cas. Co. of New York v. A & M Const., Inc.*, 96–1326, 692 So.2d 28, 30, (La. App. 1 Cir.1997), (suit for past-due insurance premiums is a suit in contract, not one on an open account); *Inland Title Co. v. Comstock*, 116 Idaho 701, 779 P.2d 15, 19, (action on an alleged

completed title insurance commitment contract was not an action on an open account).

9. Because of our disposition herein we need not reach the issue of whether some types of contractual obligations may, or may not, be superseded and merged into an action on an account stated. *See, e.g., Gerken v. Bertram's Estates*, 51 Misc.2d 371, 273 N.Y.S.2d 207, 208 (N.Y.Sup.1966), (a suit on an account stated could not be maintained on a bond and mortgage, the default of which gave rise to the action, because an account stated could not be based upon an indebtedness or liability existing solely by virtue of a specialty

¶ 12 In *Mayes County Milk Producers Association v. Hunter*, 1957 OK 252, 317 P.2d 736, an action was brought on an account stated for an insurance premium. The defendants asserted that no policy of insurance had been delivered. We said that proof of the policy was unnecessary because "in an action on account stated, the agreed balance constitutes a new cause of action and renders unnecessary proof of an original obligation, or promise, of payment by the defendants, if at the time there appears to have been an indebtedness between the parties. . . ." *Id.* 317 P.2d at 739.

¶ 13 *Mayes* does not address whether an action to recover unpaid insurance premiums is, as a matter of law, an action on an express contract, an open account, or an account stated. *Mayes* addressed the issue as framed by the parties, that being an action on an account stated on an agreed balance without proof of an express agreement.

¶ 14 The Court has also used language characterizing a balance due for insurance premiums as an "account rendered" instead of an account stated when the statement was not a final statement of an account. *Fred F. Fox Co. v. Fulton*, 1954 OK 3, 265 P.2d 716, 718. But here too, we addressed the nature of the action as framed by the parties, and not whether unpaid insurance premiums were part of an open account or account stated involving the sale of insurance.

¶ 15 We decline to adopt the concept that contractual obligations of an insurance policy are merged into, and superceded by, a subsequent statement of an amount due sent by one party to another based upon obligations becoming due under provisions of an insurance policy, and thus creating an "account" to render or state. We thus reject the argument that the contractual obligation of an insurance premium was superceded and merged into an action for an account stated.

¶ 16 In the trial court Great Plains also referred to the language in § 936 providing attorney's fees for "purchase or sale of goods, wares, or merchandise, or for labor or services." On appeal in its reply brief, Great Plains states that the insurance contract "is a contract for goods and services."

■ ¶ 17 A contract for insurance has been construed as "a service" by some courts for the purpose of applying specific consumer protection acts.[10] Assuming, but not deciding, that an insurance contract could be a service for the purpose of § 936, this controversy would not be appropriate for § 936 fees. We have held that § 936 authorizes attorney's fees to the prevailing party in a suit on a contract for labor or services only where the plaintiff **actually performed** labor or furnished services. *C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Oklahoma*, 2002 OK 99, ¶ 16, 72 P.3d 1. The service or contract is, in one sense, left unperformed by the State Insurance Fund in this controversy. We have said that: "An 'insurance policy' is a contract whereby the insurer in return for a stated consideration agrees on the happening of a specified event to pay the insured a fixed or ascertainable sum of money." *In re Barry's Estate*, 1952 OK 439, 252 P.2d 437, 438, (syllabus by the Court). *See also Young v. Stephenson*, 1921 OK 164, 200 P. 225, 227. An authority explains that after payment of a premium an insurance contract is executory and conditional as to the insurer when the specified event requiring payment to the insured has not happened. *Vance on Insurance*, 94 (B. Anderson 3d ed.1951). Great Plains does not point to any opinion of this Court where § 936 has been applied to a contract where services were not performed, and thus merely executory. We thus decline to make execution of the insurance contract equivalent to the performance of a service.

contract); *Jasper Trust Co. v. Lampkin*, 162 Ala. 388, 50 So. 337, 339 (1909), (a mere calculation of the amount due on promissory notes cannot merge the note into an account stated).

10. *See, e.g., Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 57–58 (Colo.2001), (insurance policy is contract for the sale of financial services pursuant to a consumer protection act); *Stevens v. Motorists Mutual Insurance Co.*, 759 S.W.2d 819, 821, 77 A.L.R.4th 985 (Ky. 1988), (consumer protection act applied to contract for insurance). One court has concluded that a sale of insurance cannot be labeled as a sale of either goods or services for the purpose of a consumer protection act. *Wilder v. Aetna Life & Cas. Ins.*, 140 Vt. 16, 433 A.2d 309 (1981).

¶ 18 Finally, Great Plains states that the insurance contract is a contract for the sale of goods. Great Plains offers no specific definition for "goods" that would be broad enough to include an insurance contract while at the same time excluding notes and negotiable instruments which are listed in § 936. Generally, we do not interpret a statute in such a way as render parts of it superfluous. *In re Baby Girl L.*, 2002 OK 9, ¶ 21, 51 P.3d 544, 554. In the absence of cogent argument explaining why insurance contracts should be treated differently, we decline to conclude that an insurance contract is the sale of goods.

¶ 19 Because we have rejected the arguments characterizing the action as an open account, account stated, or the sale of goods or services, we reject the assertion that § 936 applies to an action based upon an insurance contract and brought for the purpose of collecting an insurance premium. We thus affirm the trial court's ruling that § 936 does not support the recovery of an attorney's fee in this controversy.[11]

## II. Section 941 and Frivolous Actions

¶ 20 We thus proceed to see whether Great Plains might be entitled to a fee under § 941. It states:

A. The defendant in any civil action brought in any court of this state by any state agency, board, commission, department, authority or bureau authorized to make rules or formulate orders shall be entitled to recover against such state entity court costs, witness fees and reasonable attorney fees if the court determines that the action was brought without reasonable basis or is frivolous. This subsection shall apply to any action commenced on or after October 1, 1982.

B. The respondent in any proceeding brought before any state administrative tribunal by any state agency, board, commission, department, authority or bureau authorized to make rules or formulate orders shall be entitled to recover against such state entity court costs, witness fees and reasonable attorney fees if the tribunal or a court of proper jurisdiction determines that the proceeding was brought without reasonable basis or is frivolous; provided, however, if the tribunal is required by law to act upon complaints and determines that the complaint had no reasonable basis or is frivolous, the tribunal may assess the respondent's costs, witness fees and reasonable attorney fees against the complainant. This subsection shall apply to any proceeding before any state administrative tribunal commenced on or after November 1, 1987.

12 O.S.2001 § 941.

This legislative enactment expressly grants authority for attorney's fees to be awarded against a state entity, and sovereign immunity issues are not implicated. *See Vanderpool v. State*, 1983 OK 82, 672 P.2d 1153, 1157, (Legislature could determine the extent of sovereign immunity).

¶ 21 Section 941 fees are not proper simply because a state agency is unsuccessful in its legal action. *State ex rel. Oklahoma Bar Association v. Armstrong*, 1992 OK 130, 863 P.2d 1107, 1108. *See TRW/Reda Pump v. Brewington*, 1992 OK 31, 829 P.2d 15, 22–23, (an appeal is not frivolous merely because a trial court judgment or decision is affirmed). Whether an action is frivolous depends upon several factors. These factors include, but are not limited to, whether the issue is one of first impression involving conflicting statutes, a lack of statutory definitions, and the timing of the proceeding as it relates to applicable law. *Matter of Williams Natural Gas Co.*, 1992 OK 83, 837 P.2d 1387, 1390–1391.

¶ 22 In *Shabazz v. Keating*, 1999 OK 26, 977 P.2d 1089, we discussed the standard for "frivolous" in the context of reviewing 12 O.S.Supp.1994 § 2011(C), 20 O.S.1991 § 15.1, and 57 O.S.Supp.1995 § 566(C). We said that a matter is frivolous when it has "no legitimate legal or factual basis and is so totally devoid of merit as to be regarded as facially unworthy of consideration." *Sha-*

---

11. Although the trial court ruled that § 936 did not apply to the State on other grounds, we may nevertheless affirm a trial court's judgment when it reaches the correct result, albeit based on a different rationale. *Dixon v. Bhuiyan*, 2000 OK 56, ¶ 9, 10 P.3d 888, 891.

*bazz,* at ¶ 13, 977 P.2d at 1095. Further, all doubts concerning whether the proceeding is frivolous must be resolved in favor of the party against whom the fees are sought. *Shabazz,* at ¶ 13, 977 P.2d at 1095; *TRW/ Reda Pump v. Brewington,* 829 P.2d at 23.

¶ 23 In its request for attorney's fees pursuant to § 941 Great Plains alleged: 1. The action was brought by the State Insurance Fund based upon the results of one audit performed on its books and records; 2. After the Fund introduced its evidence Great Plains moved for judgment based upon the State's failure to offer evidence proving its claim; 3. The trial court granted the motion because the State had not made a determination whether certain payments were made in the nature of payments to employees or independent contractors; 4. The Fund could have avoided litigation by taking time to determine that the payments were made to independent contractors and not employees; and 5. Because the State failed to make this determination it did not have a reasonable basis for assessing an additional premium, and therefore the subsequent District Court action was without a reasonable basis and was frivolous.

¶ 24 The Fund argued in its trial brief that Great Plains was responsible for workers' compensation insurance premiums for the employees of its subcontractors. The trial court was asked to apply provisions of 85 O.S.Supp.2000 § 11(B)(1).[12] Specifically, the Fund argued that (1) independent contractors were used by Great Plains, (2) Great Plains was liable for workers' compensation for the employees of these independent contractors, (3) the premium payments Great Plains paid had not included these employees, and (4) the exceptions in § 11(B)(1) to this liability did not apply.

¶ 25 The Fund pointed to a notice in the insurance policy stating that:

> Be sure each subcontractor furnishes you with a certificate of his compensation insurance (provided without cost by all insurance carriers upon request) or his certificate of non-coverage. These must be available for examination by our audit or in order to avoid payment of additional premium on subcontractors and their employees.

Trial Brief of State, O.R. at 51–52.

In sum, the State Insurance Fund argued that the books of Great Plains showed payments to subcontractors, but those same records did not contain the policy-required records necessary to avoid payment of additional premiums.

¶ 26 The trial court sustained the demurrer to the evidence by Great Plains. The first part of the trial court's reasoning appears to be that the State Insurance Fund did not show that Great Plains had knowledge of the alleged contractual language requiring an insured to maintain certain records. The trial court also stated that the Fund did not make an independent inquiry on the workers' compensation status of certain persons. The trial court also stated in its journal entry that the State Insurance Fund had improperly relied upon the guidelines published by the National Council on Workers' Compensation Insurance (NCCI)

---

12. 85 O.S.Supp.2000 § 11(B)(1):

B. Liability of any person, firm, or corporation having an interest in the subject matter, employers and contracting employers, general or intermediate, for compensation under the Workers' Compensation Act, when other than the immediate employer of the injured employee, shall be as follows:

1. The independent contractor shall, at all times, be liable for compensation due to his direct employees, or the employees of any subcontractor of such independent contractor, and the principal employer shall also be liable in the manner hereinafter specified for compensation due all direct employees, employees of the independent contractors, subcontractors, or other employees engaged in the general employer's business; provided, however, if an independent contractor relies in good faith on proof of a valid workers' compensation insurance policy issued to a subcontractor of the independent contractor or on proof of a Certification of Non Coverage Under the Workers' Compensation Act filed by the subcontractor with the Commissioner of Labor under Section 415.1 of Title 40 of the Oklahoma Statutes, then the independent contractor shall not be liable for injuries of any employees of the subcontractor. Provided further, such independent contractor shall not be liable for injuries of any subcontractor of the independent contractor unless an employer-employee relationship is found to exist by the Workers' Compensation Court despite the filing of a Certification of Non Coverage Under the Workers' Compensation Act.

for the assessment of a premium, instead of applicable Oklahoma statutes.

¶ 27 We are not called upon to address the correctness of the trial court's order sustaining the demurrer. Rather, we are called to determine whether the trial court correctly declined to impose attorney's fees pursuant to § 941. We have used an abuse of discretion standard when applying statutes similar to § 941 that also required a District Court to determine what is reasonable or frivolous. *TRW/Reda Pump v. Brewington*, 1992 OK 31, n. 4, 829 P.2d 15, 21, (12 O.S.Supp.1987 § 2011 and 23 O.S.Supp.1986 § 103). An application for § 941 invokes the exercise of judicial discretion to determine whether the State's claim is reasonable or frivolous, and is reviewed using an abuse of discretion standard. An abuse of judicial discretion occurs when a trial court's order is exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Christian v. Gray*, 2003 OK 10, ¶ 44, 65 P.3d 591, 609.

¶ 28 The argument of the Fund was based upon language in a statute and insurance policies. Its claim failed, in part, because the Fund failed to produce evidence that Great Plains had knowledge of alleged contractual language creating a record-keeping burden on Great Plains. This analysis by the trial court does not attack the reasonableness of the State Insurance Fund's claim, but the Fund's failure to elicit the proper proof from its witnesses. The demurrer was also sustained based upon the idea that with the absence of proof showing a record-keeping burden on the part of Great Plains, the State Insurance Fund was required to conduct an independent inquiry as to whether the payments made by Great Plains to others were of such a nature so as to require additional insurance. The trial court did not supply in its order any authority on the nature of the independent inquiry required by the Fund.

¶ 29 Generally, the party invoking a court's judicial discretion with a request for judicial relief must satisfy the applicable burden for the relief sought. Whether expressed as a burden to show facts,[13] or a burden to preserve legal issues in the trial court and by briefs on appeal,[14] the party asserting an entitlement to judicial relief must make a combined factual/legal showing of entitlement to the judicial relief sought. Great Plains must show that § 941 applies to the facts of this controversy. Great Plains does not point to any decisions of this Court, or the Court of Civil Appeals, on an interpretation of 85 O.S.Supp.2000 § 11(B)(1) that would make the action brought by State Insurance Fund to be without a reasonable basis when it was instituted in 1998. Great Plains challenged the audit methods of the Fund in the District Court, and specifically the Fund's alleged reliance upon guidelines published by the National Council on Workers' Compensation Insurance (NCCI). But, other than the fact that the trial court rejected this reliance, Great Plains makes no argument explaining why this reliance should be characterized as unreasonable, as opposed to merely incorrect. Great Plains does not show how the Fund's claim is unreasonable, as opposed to merely lacking in evidentiary proof before the trial court. We conclude that Great Plains failed to show that the State Insurance Fund's claim was without a reasonable basis or facially unworthy of consideration. Thus, the trial court's order denying the motion for attorney's fees is thus not clearly against reason and the evidence.

13. *Board of County Commissioners of Marshall County v. Snellgrove*, 1967 OK 108, 428 P.2d 272, 276, (it is well settled that the burden of proof rests upon the party having the affirmative as made up by the pleadings). *See, e.g., Tindle v. Linville*, 1973 OK 64, 512 P.2d 176, 178, (burden of proof rests on the party asserting claim); *Matter of Bogan's Estate*, 1975 OK 134, 541 P.2d 854, 856, (burden of proof rests on the proponent of a will); *Digital Design Group, Inc. v. Information Builders, Inc.*, 2001 OK 21, ¶ 30, 24 P.3d 834, 842, (burden of proof rests upon the party asserting defense).

14. *See, e.g., Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc.*, 1985 OK 66, 713 P.2d 572, 579, (party aggrieved by an order in limine should raise the issue at the appropriate time during the trial, either by objecting when the challenged evidence or testimony is admitted or by making an offer of proof of the excluded matter); *Slagell v. Slagell*, 2000 OK 5, 995 P.2d 1141, 1141, (appeal dismissed for failure to preserve errors in motion for new trial); *Kerr v. Clary*, 2001 OK 90, ¶ 9, 37 P.3d 841, 843, (party waived issue by not briefing it on appeal).

¶ 30 We thus affirm the trial court's post-judgment order denying the application for attorney's fees and costs. That part of the trial judge's order denying costs was affirmed by the opinion of the Court of Civil Appeals, stands unreviewed on certiorari, and is thus affirmed. That part of the opinion of the Court of Civil Appeals on the post-judgment order for attorney's fees is vacated, but those parts of its opinion affirming the denial of costs and judgment on the action brought by the State Insurance Fund are left undisturbed.

¶ 31 WATT, C.J., OPALA, V.C.J., HODGES, LAVENDER, BOUDREAU and WINCHESTER, JJ., Concur.

¶ 32 HARGRAVE, KAUGER, JJ., Concur in Result.